NICHOLAS A. BROWN (SBN 198210)
  brownn@gtlaw.com
STEPHEN ULLMER (SBN 277537)
  ullmers@gtlaw.com
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
Telephone: 415.655.1271
Facsimile: 415.520.5609

Attorneys for Defendant Tagged, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EMMANUEL C. GONZALEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TAGGED, INC.,<br><br>　　　　　Defendant. | Case No.: 16-CV-00574-YGR<br><br>**TAGGED'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>Judge: Hon. Yvonne G. Rogers<br>Date:　Jun 21, 2016<br>Time:　2:00 pm<br>Ctrm:　1<br><br>Complaint Filed: October 22, 2014<br>Trial Date: December 12, 2016 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 21, 2016 at 2:00 pm, or as soon thereafter as counsel may be heard, Defendant Tagged, Inc. ("Tagged") will, and hereby does, move for an order granting summary judgment of invalidity.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the complete record in this action, and all matters of which the Court may take judicial notice.

**RELIEF REQUESTED**

Tagged respectfully requests the Court grant summary judgment of invalidity of the six asserted claims: claims 1-3 of the '807 patent and claims 1, 42, and 53 of the '665 patent.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................... 1

RELIEF REQUESTED ............................................................................................................. 1

I.    INTRODUCTION .......................................................................................................... 1

II.   BACKGROUND ........................................................................................................... 2

   **A.**   The Gonzalez patents describe "digital labels" for webpages. ........................... 2

   **B.**   The asserted claims were found invalid under § 101  in the *New Life* case..................... 2

   **C.**   The asserted claims describe creating digital labels for websites and using them to allow searches. ............................................................................................................... 3

   **D.**   Gonzalez's infringement theory confirms that the asserted claims describe creating digital labels and using them to allow searches. .................................................. 4

   **E.**   Mr. Gonzalez had no technical experience when he prepared his patent application......... 6

III.  LEGAL STANDARDS.................................................................................................... 7

IV.   THE GONZALEZ PATENTS ARE INVALID DUE TO COLLATERAL ESTOPPEL .. 8

V.    THE GONZALEZ PATENTS ARE INVALID UNDER 35 U.S.C. § 101 ........................... 9

   **A.**   Patent claims to abstract ideas are invalid.......................................................... 9

   **B.**   The asserted claims describe an abstract idea: using labels for searches......................... 10

   **C.**   The asserted claims do not contain the "inventive concept" required by *Alice*. ............... 14

VI.   THE GONZALEZ PATENTS ARE INVALID UNDER 35 U.S.C. § 102...................... 15

   **A.**   Patent claims are invalid if they don't describe something new.................................. 15

   **B.**   The pre-existing eBay website invalidates the asserted claims. ................................ 15

   **C.**   Mr. Gonzalez's admissions confirm that he did not invent anything new....................... 22

VII.  CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks v. Verizon Communications*,
  694 F. 3d 1312 (Fed. Cir. 2012)..................................................................... 7, 15

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ................................................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................................... 7

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) ....................................................................... 24

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
  246 F. 3d 1368 (Fed. Cir. 2001) ...................................................................... 15

*Collins v. DR Horton, Inc.*,
  505 F. 3d 874 (9th Cir. 2007) ............................................................................ 8

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F. 3d 1366 (Fed. Cir. 2011) ..................................................................... 9, 14

*Gonzalez v. New Life Ventures*,
  2:14-cv-00907-JRG (E.D. Tex., April 25, 2016) .........................................*passim*

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ............................................................................................. 9

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F. 3d 1343 (Fed. Cir. 2015) ....................................................................... 13

*Kendall v. Visa USA, Inc.*,
  518 F. 3d 1042 (9th Cir., 2008) .......................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................................................................... 7

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
  132 S.Ct. 1289 (2012) .................................................................................... 9, 15

*Microsoft Corp. v. i4i Ltd.*,
  131 S.Ct. 2238 (2011) ........................................................................................ 7

*Mortgage Grader, Inc. v. First Choice Loan Services*,
__ F.3d. __, Case No. 2015-1415 (Fed. Cir., Jan. 20, 2016) .................................. 7, 10, 13, 14

*Ohio Willow Wood Co. v. Alps South, LLC*,
735 F. 3d 1333 (Fed. Cir. 2013) ................................................................................. 8

*ParkerVision, Inc. v. Qualcomm Inc.*,
621 Fed. Appx. 1009 (Fed. Cir. 2015) ........................................................................ 7

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
491 F.3d 1342 (Fed. Cir. 2007) ................................................................................ 24

*Schering Corp. v. Geneva Pharms., Inc.*,
339 F.3d 1373 (Fed. Cir. 2003) ................................................................... 7, 15, 17

*Soverain Software LLC v. Newegg Inc.*,
705 F.3d 1333 (2013) .................................................................................................. 8

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ................................................................... 7, 10, 13, 14

**Statutes**

35 U.S.C. § 101 ...........................................................................................*passim*

35 U.S.C. § 102 ...................................................................................... 1, 2, 15

1  **I.      INTRODUCTION**

2        The patents asserted by Mr. Gonzalez in this case are about digital labels for webpages.

3  Mr. Gonzalez described his invention to the Patent Office as applying to webpages an idea that

4  was already "common in commerce in physical form": the use of labels to organize things and

5  make them easier to find.  The patents summarize the invention as using digital labels for finding

6  webpages in the same way that library cards are used for finding books in a library.

7        The patent claims that Mr. Gonzalez asserts here are invalid as a matter of law for three

8  related reasons.  First, each of the six asserted claims was recently found invalid under 35 U.S.C.

9  § 101 in the related *New Life Ventures* case. *Gonzalez v. New Life Ventures*, 2:14-cv-00907-JRG

10 (E.D. Tex., April 25, 2016).   The collateral estoppel effect of this decision means that the

11 asserted claims are invalid here as well.

12       Second, even if collateral estoppel did not apply, the asserted claims are invalid because

13 the decision in the New Life Ventures case was correct as a matter of law.  The Supreme Court

14 established in *Alice Corp. v. CLS Bank Int'l* that patent claims describing an abstract idea are

15 invalid unless they include an "inventive concept", *i.e.* something sufficient to ensure that the

16 patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

17 134 S. Ct. 2347, 2352 (2014); 35 U.S.C. § 101.  Mr. Gonzalez's claims fail this test because they

18 do not include an "inventive concept" beyond the idea of using labels to search for webpages.

19 The Gonzalez patents do not describe any tangible technical innovation; to the contrary, they

20 describe using routine and conventional technology, such as database searches, to implement the

21 abstract idea of using labels to search for webpages.  Mr. Gonzalez admitted that he had no

22 technical experience other than a non-credit class he took in the 1970s, more than a decade

23 before the internet even existed.  This confirms that the patents are abstract: the fact that Mr.

24 Gonzalez did not understand even the most basic features of the pre-existing Internet search

25 technologies shows that he could not have invented specific improvements to them.

26       Third, the asserted claims are invalid because the invention they claim is so generic that

27 it was already in widespread use many years before the patents were filed, for example by the

28 well-known eBay website.   The functionality that Mr. Gonzalez accuses of infringement is

identical in all pertinent respects to what was used in the preexisting eBay website.  Furthermore, though Mr. Gonzalez argued to the Patent Office that there "is no prior art for website labels," he was forced to admit in his deposition that he did ***not*** invent digital labeling of websites, and that it was actually "commonplace" at the time he filed his patent application.  Thus, the Gonzalez patents are invalid under 35 U.S.C. § 102 as well.

## II.   BACKGROUND

### A.   The Gonzalez patents describe "digital labels" for webpages.

Mr. Gonzalez originally asserted five related patents in this case, the '807, '339, '665, '333, and '325 patents.[1]  All five patents claim priority to a provisional application that was filed October 4, 2000.[2]  The patents explain that the pre-existing internet search engines, such as Yahoo! and Altavista, were following "the wrong path" because they were based on "word matches" or "listings-by-category."[3]  The patents explain that this preexisting "word-match technology is rather poorly suited to finding commonplace commercial information," and describe a solution: applying digital labels to websites so they can be more easily found.[4]  Specifically, the patents describe using online forms to ask a user questions, and converting the responses into digital labels that are stored in a database and used to perform searches.[5]

### B.   The asserted claims were found invalid under § 101  in the *New Life* case.

On April 26, 2016, Mr. Gonzalez informed Tagged that he was limiting the asserted claims to claims 1-3 of the '807 patent and claims 1, 42, and 53 of the '665 patent.  Earlier that day, the parties were notified via ECF that those six claims had been found invalid under § 101 in the related *New Life* case.  *Gonzalez v. New Life Ventures*, 2:14-cv-00907-JRG (E.D. Tex., April 25, 2016).[6]

---

[1] Declaration of Nicholas Brown In Support Of Motion For Summary Judgment Of Invalidity ("Brown Decl.") at Exs. 1-5 ('807, '339, '665, '333 and '325 patents, respectively).
[2] *See also* Brown Decl., Ex. 6 (*New Life* trial, 2-08-2016) at 106:1-107:4 (draft patent application dated Aug. 5, 2000 is the earliest written record of Mr. Gonzalez's ideas).
[3] Brown Decl., Ex. 3('665 patent) at 1:53-55; 2:15-24; 7:28-29.
[4] Brown Decl., Ex. 3 ('665 patent) at 2:5-7; *see generally id.* at 2:51-3:57.
[5] *See e.g.* Brown Decl., Ex. 3 ('665 patent) at Figs. 4a – 4i, 3:13-41.
[6] Attached as Brown Decl., Ex. 18.

**C.      The asserted claims describe creating digital labels for websites and using them to allow searches.**

The asserted independent claims of the '807 patent are reproduced below:

1. A host website apparatus for listing subscribers comprising:

a computer system,

said computer system includes a digital label database for providing to a listing subscriber digital labels representing different specific qualities and a subscriber database for storing a listing of subscribers' digital labels;

said computer system being configured to respond to a subscriber's request for listing and guiding the subscriber via the Host Website display to enter information pertaining to the subscriber and converting the information to digital labels by accessing said digital label database and storing the subscriber's digital labels in said subscriber database; and

said computer system further configured to enable users to search said subscriber database for subscriber digital labels identifying subscriber qualities.

3. A method for listing websites on the Internet comprising the steps of:

configuring a computer system to compile a digital label database for providing to a listing subscriber digital labels representing different specific qualities and to compile a subscriber database for storing a listing of subscribers' digital labels;

configuring said computer system to respond to a subscriber's request for listing; guiding the subscriber via a website display to enter information pertaining to the subscriber; and

convening the information to digital labels by accessing said digital label database and storing subscriber digital labels in Host Website databases.

These claims require a "computer system" that responds to a "subscriber" that wants to create a "listing" by guiding them to enter information, converts the entered information into "digital labels" from a database of possible digital labels, and then stores the resulting digital labels in a "subscriber database," which contains listings of the digital labels that apply to particular subscribers.  Claim 1 also requires searching the subscriber database for the labels.

The asserted independent claim of the '665 patent, claim 1, is reproduced below:

1. A method for multi-parameter digital labelling of Internet Websites, comprising:

gathering of unambiguous, multi-parameter qualitative data concerning a single or a plurality of at least one of an Internet website, an Internet posting, their substantive contents, and their owner or creator;

sourcing, from the owner or creator of said website or Internet posting, each said item of qualitative data referring to said website, said internet posting, or its substantive contents or its owner or creator;

producing a plurality of digital labels for each said website or internet posting, wherein each digital label uniquely refers to and represents a particular item of qualitative information;

wherein producing of digital labels further comprises encoding of the qualitative data in any digital form;

domiciling of these multi-parameter digital labels on at least one of the same computer, the same computer network, and on several computers linked to each other; manipulation of the said multi-parameter digital labels comprising generation of a list of at least one of websites and Internet postings that match parameters stipulated by an entity conducting a search and represented in the digital labels according to at least one of the presence of, the absence of, the numerical or other value contained in, the numerical or other value not contained in, any one, all, and any configuration of the labels that have reference to one or more websites or Internet postings; and making available the effective use of these multi-parameter digital labels and the means for their manipulation, to the general public through the Internet.

This claim describes a method of "multi-parameter digital labelling" of websites or internet postings, which requires gathering at least two pieces of "qualitative data" about the website/posting from its owner or creator, encoding each of those pieces of qualitative data into digital labels (which can be "any digital form" that "uniquely refers to and represents" the data),

1   and then putting the digital labels into a database so that they can be searched by "the general

2   public through the Internet."[7]

3           The term "digital label" was construed as meaning "something symbolic of

4   unambiguous qualitative data about an item, its maker, or its owner, in digital form."[8]  The claim

5   construction order explains that the patents make clear that a label is "symbolic of a qualitative

6   characteristic about the subject being labeled," in contrast to word-matches, which are a "mere

7   character-strings of unknown significance."[9]  It further explains that "qualitative characteristics"

8   are qualities of a subject entity, such as height, weight, age, sales, profits, etc.[10]

9           The claim construction order also finds that "search" has its ordinary meaning, and

10  rejects Mr. Gonzalez's argument that the term was limited to "dynamically filter[ing] digital

11  labels according to configurations in the unique desires of the person directing the search."[11]

12

13      **D.      Gonzalez's infringement theory confirms that the asserted claims describe creating digital labels and using them to allow searches.**

14          Mr. Gonzalez generally contends that Tagged's dating websites (www.hi5.com and

15  www.tagged.com) infringe because they present users with online forms that collect

16  information—such as gender, age, and ethnicity—that is converted into "digital labels" and used

17  to allow searches.  Similarly, in the related *New Life Ventures* case, Mr. Gonzalez asserted that

18  the accused dating website (www.sugardaddie.com) infringed because it presented users with

19  online forms that collected information such as 'Hair Color' and 'Body Type', and converted it

20  into "digital labels" that were used to allow searches.  This brief focuses on Mr. Gonzalez'

21  infringement theory in the *New Life Ventures* case because he has not yet served an infringement

22  theory for Tagged that identifies any HTML or other source code.[12]

---

23  [7] Though the language of the last two claim elements is verbose, there is no dispute that it is

24  satisfied by generating a list of websites/postings with a label that matches a search parameter, so long as the search was made available "to the general public over the Internet."

25  [8] *Gonzalez v. Infostream et al.*, 2:14-cv-00906-JRG-RSP, Dkt. No. 109 (E.D. Tex., Sept. 21, 2015) at 18 (also attached as Brown Decl., Ex. 19).

26  [9] *Id.* at 15-16.

    [10] *Id.* at 16-17.

27  [11] *Id.* at 25-30.

28  [12] Mr. Gonzalez's served infringement contentions on Feb. 14, 2015 for both Tagged and New Life Ventures.  Tagged made its source code available for inspection on March 10.  Mr. Gonzalez inspected the code in late July, but never supplemented his infringement contentions.

Mr. Gonzalez's infringement theory in the *New Life Ventures* trial was that infringement occurred because the accused website: (1) prompts users to fill out HTML forms with information about themselves, such as 'body type' and 'yearly income'; (2) uses a database to store values representing this information, *i.e.* it stores integers representing 'body type' and 'yearly income'; and (3) it allows other users to search the database for those values. The table below shows portions of the HMTL forms that are used on the accused website:

| Browser | HTML |
|---|---|
| **BodyType**<br>✓ Select<br>Slim<br>Athletic<br>Average<br>Muscular<br>A few extra pounds<br>Curvy<br>Overweight | `<select name="bodytype" id="bodytype" class="select_ui">`<br>`<option value="">Select</option>`<br>`<option value="7">Slim</option>`<br>`<option value="2">Athletic</option>`<br>`<option value="3">Average</option>`<br>`<option value="5">Muscular</option>`<br>`<option value="1">A few extra pounds</option>`<br>`<option value="4">Curvy</option>`<br>`<option value="6">Overweight</option>`<br>`</select>` |
| **Yearly Income**<br>✓ Select<br>Less than 100,000<br>100,000 - 500,000<br>500,000 - 1,000,000<br>1,000,000 - 5,000,000<br>5,000,000 - 10,000,000<br>10,000,000 Or More<br>NEXT | `<select name="yearlyincome" id="yearlyincome" class="select_ui">`<br>`<option value="">Select</option>`<br>`<option value="1">Less than 100,000</option>`<br>`<option value="2">100,000 - 500,000</option>`<br>`<option value="3">500,000 - 1,000,000</option>`<br>`<option value="4">1,000,000 - 5,000,000</option>`<br>`<option value="5">5,000,000 - 10,000,000</option>`<br>`<option value="6">10,000,000 Or More</option>`<br>`</select>` |

The left side of the table shows the drop-down menus that appear in the browser, and right side shows the HTML code that generates those drop-down menus. The HTML code shows how the subscriber's selection of a particular 'body type' or 'yearly income' is represented by an integer. For example, the 'body type' selection 'Slim' is represented by 7, and 'Athletic' is represented by 2. Similarly, the 'yearly income' of 'Less than 100,000') is represented by 1. According to Mr. Gonzalez, these are examples of digital labels that infringe his patent, because these values are transmitted to the website server, which stores them in a database and uses them in performing searches. If a user wanted to search for someone with the body-type 'Slim', the

---

Mr. Gonzalez was scheduled to file a motion for summary judgment of infringement on April 26, 2016, which would have contained those contentions, but he filed a motion to stay instead.

database would search for the value 7 in the body-type field.

**E.    Mr. Gonzalez had no technical experience when he prepared his patent application.**

Mr. Gonzalez is the sole named inventor.  He has no technical experience—except that between 1971 and 1974, while he was in business school, he took a non-credit class on computer programming.[13]  That was more than 25 years before he prepared and filed the patent application on his idea for improving Internet searches.

Mr. Gonzalez attached a page of HTML code to his patent application, but he got that code from someone else.[14]  When asked about it as his deposition, he testified as follows:

> Q. And there's HTML code there. Do you recognize that HTML code?
> A. <u>Well, it's complicated. I'm not sure I recognize it</u>, but yeah.
> Q. But you do recognize it as HTML code?
> A. Well, it looks like it.[15]

Though Mr. Gonzalez testified that he understood generally that HMTL was "a protocol for how to display websites," he did not understand what an HTML tag was.[16]  This shows his lack of technical understanding, because tags are the basic building-blocks of HMTL; they are what separates an HTML file from an ordinary text file.[17]  Similarly, Mr. Gonzalez did not know what the HMTL specification was (it is the standards document that defines the HTML language).[18]  Furthermore, though his patents specifically claim the use of databases, and database searches, Mr. Gonzalez did not know what "SQL" was and had not heard that term used, even though SQL is the query language used with all major databases, and had been known since at least 1974.[19]

Mr. Gonzalez came up with the ideas that led to the asserted patents while overseeing

---

[13] Brown Decl., Ex. 7 (Gonzalez Depo.) at 40:4-41:3; 9:5-9; Ex. 6 (*New Life* trial, 2-08-2016) at 101:24-103:1.

[14] Brown Decl., Ex. 7 (Gonzalez Depo.) at 58:16-22; Ex. 17 (Provisional Application) at p.55. This HMTL describes a portion of the header-bar of a website called AtoZPhillipines.net.

[15] Brown Decl., Ex. 7 (Gonzalez Depo.) at 57:15-20.

[16] *Id.* at 146:4-11; Ex. 20 (HMTL ); 137:7-14 (HTML tag).

[17] Brown Decl., Ex. 8 (HTML FOR DUMMIES (1995)) at 67.

[18] Brown Decl., Ex. 7 (Gonzalez Depo.) at 146:20-147:4; Brown Decl., Ex. 20 (HMTL Specification).

[19] Brown Decl., Ex. 7 (Gonzalez Depo.) at 43:8-44:6; Ex. 9 (MYSQL/PHP DATABASE APPLICATIONS (2001)) at NLV-000747 ("All of the major databases make use of the Structured Query Language (SQL)"); Ex. 10 (1974 Sequel article).

the construction of a hotel in the Philippines.[20] He hired someone to create a website for the

hotel, but when he searched on the internet, he could not locate the website.[21]  He concluded that

"this was a deficient system," and that digital labels were the solution:

> Q.  So if I understand what you're saying, <u>the idea that you had</u> was that instead of using either a category tree or alphanumeric raw string matching essentially, <u>you would have website owners label, digitally label their own websites</u>?
>
> <u>A. Using a convention that was promulgated or agreed somehow by the search engine</u>. A website owner couldn't just put data on his site and hope that people would understand what that data meant in -- in a certain -- in a sure way. So you -- it's like Morse code. I mean, somebody has to agree that, you know, so many dots and dashes mean this letter and you can't just put out dots and dashes and hope that the rest of the world will understand what you're saying unless you know what is the code.[22]

Mr. Gonzalez did not talk to anyone with any technical experience in coming up with these

ideas, because he felt he understood "the concepts that can be employed in computer

programming."[23] Mr. Gonzalez drafted his patent application himself.[24]

### III.    LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.[25]  On motion for summary judgment,

the court views the evidence and any disputed factual issues in the light most favorable to the

party opposing the motion.[26]

Invalidity must be established by clear and convincing evidence.[27]   Nonetheless,

judgment of invalidity as a matter of law is regularly mandated by the Federal Circuit based on

35 U.S.C. § 101.[28] Judgment of invalidity as a matter of law is also regularly mandated by the

Federal Circuit based on anticipation by prior art,[29] even though anticipation is question of fact.[30]

---

[20] Brown Decl., Ex. 7 (Gonzalez Depo.) at 15:18-23.

[21] *Id.* at 18:8-12; 19:14-19.

[22] *Id.* at 28:25-29:18; *see also* 24:20-28:1.

[23] *Id.* at 39:8-24; 49:11-23; Brown Decl., Ex. 6 (*New Life* trial, 2-08-2016) at 104:22-25.

[24] Brown Decl., Ex. 7 (Gonzalez Depo.) at 55:10-56:1.

[25] Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[26] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[27] *Microsoft Corp. v. i4i Ltd.*, 131 S.Ct. 2238, 2242 (2011).

[28] *E.g. Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014); *Mortgage Grader, Inc. v. First Choice Loan Services*, __ F.3d. __, Case No. 2015-1415 (Fed. Cir., Jan. 20, 2016).

[29] *E.g. Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373 (Fed. Cir. 2003); *ParkerVision, Inc. v. Qualcomm Inc.*, 621 Fed. Appx. 1009, 1018-1022 (Fed. Cir. 2015); *Soverain Software*

## IV. THE GONZALEZ PATENTS ARE INVALID DUE TO COLLATERAL ESTOPPEL

The Eastern District of Texas's order grating summary judgment of invalidity in the *New Life Ventures* case is binding on Mr. Gonzalez here. The six asserted claims at issue here are the same six claims that were invalidated in the *New Life Ventures* case. Thus, though this is a patent case, the issue of whether collateral estoppel applies is based on Ninth Circuit law.[31]

Collateral estoppel, or issue preclusion, prevents a party from relitigating a previously decided issue if four requirements are met: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."[32]

These four factors are met here. The fourth factor is met because Mr. Gonzalez is the plaintiff in both cases. The first two factors are met because Mr. Gonzalez actually litigated the issue of invalidity under 35 U.S.C. § 101 in the *New Life Ventures* case, and had a full and fair opportunity to present his position. The same six claims were at issue, and Mr. Gonzalez filed both an opposition and a sur-reply to the summary judgment motion that was granted.

Finally, the third factor is met because "a final judgment retains its collateral estoppel effect, if any, while pending appeal."[33] The order granting judgment of invalidity in the *New Life Ventures* case is a final, appealable judgment, and the "benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment."[34]

Thus, the six claims asserted here should be found invalid based on the judgment of invalidity in the *New Life Ventures* case.

---

*LLC v. Newegg Inc.,* 705 F.3d 1333, 1339-1340 (2013).

[30] *ActiveVideo Networks v. Verizon Communications*, 694 F. 3d 1312, 1327 (Fed. Cir. 2012).

[31] *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F. 3d 1333, 1342 (Fed. Cir. 2013) (stating that "review of a collateral estoppel determination is generally guided by regional circuit precedent, but we apply our own precedent to those aspects of such a determination that involve substantive issues of patent law," and citing cases showing that Federal Circuit law applies to determinations of whether "a particular claim in a patent case is the same as or separate from another claim.")

[32] *Kendall v. Visa USA, Inc.*, 518 F. 3d 1042, 1050 (9th Cir., 2008).

[33] *Collins v. DR Horton, Inc.*, 505 F. 3d 874, 882 (9th Cir. 2007).

[34] *Id.*

1    V.     THE GONZALEZ PATENTS ARE INVALID UNDER 35 U.S.C. § 101

2        A.     Patent claims to abstract ideas are invalid.

3            Patent claims that are not limited to something that is more than just a mental process

4    are invalid:  "Methods which can be performed mentally … are unpatentable abstract ideas."[35]

5    In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.Ct. 1289 (2012), the

6    Supreme Court set out a two-step "framework for distinguishing patents that claim laws of

7    nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications

8    of those concepts."[36]  First, courts must determine if the claims at issue are directed to a patent-

9    ineligible concept.[37]  If so, the next step is to look for an "inventive concept"—*i.e.*, an element or

10   combination of elements that is sufficient to ensure that the patent in practice amounts to

11   significantly more than a patent upon the abstract idea itself.[38]  Claims that lack an "inventive

12   concept" are invalid.

13           For example, in *Parker v. Flook* the Supreme Court considered a patented method of

14   updating an alarm-limit used in a catalytic-conversion process.[39]  There was no question that the

15   claims were limited to something specific and concrete: a catalytic-conversion process that used

16   an updated alarm limit.[40]  But the Supreme Court held that these claims were not patent-eligible,

17   because "the only difference" between the conventional methods of changing alarm limits and

18   the claimed invention was something that was not patent-eligible: a "mathematical algorithm or

19   formula."[41]   In other words, the claims as a whole were unpatentable because "once that

20   algorithm is assumed to be within the prior art, the application, considered as a whole, contains

21   no patentable invention."[42]

22

23

24   [35] *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F. 3d 1366, 1371 (Fed. Cir. 2011);
     *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) ("mental processes … are not patentable").

25   [36] *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

     [37] *Id.*

26   [38] *Id.*

27   [39] 437 U.S. 584 (1978).
     [40] 437 U.S. at 585-586.

28   [41] *Id.*
     [42] *Id.* at 594.

1

### B.   The asserted claims describe an abstract idea: using labels for searches.

2   The Gonzalez patents are invalid because they claim the abstract idea of using labels to

3   facilitate searches.[43]  While the claims apply this idea to searches for webpages, and require the

4   use of a computer, a database, and the Internet, this is not enough to make them patent-eligible.[44]

5   This is because an abstract idea cannot be transformed into a patentable invention by "appending

6   conventional steps, specified at a high level of a generality."[45]  As a result, "use of the Internet

7   does not transform an otherwise abstract idea into patent-eligible subject matter."[46]  Similarly,

8   use of a database does not make an abstract idea patent-eligible.[47]

9   Mr. Gonzalez told the Patent Office that his invention was taking an idea that was

10   already "common in commerce in physical form"—the use of labels—and applying it to

11   websites:

12   > The examiner's argument is akin to observing that any item in a warehouse can be
   > labeled, after someone has opened the boxes one by one and evaluated what's in

13   > them; this is indeed obvious, but it is not what Applicant is claiming.   What
   > Applicant proposes is a labeling system based on information provided by those

14   > who packed the boxes and which will allow anyone to know precisely what the
   > contents of the boxes are, without having to open and evaluate them one by one.

15   > While this kind of labeling is common in commerce in physical form (e.g., items
   > in supermarkets), it has not heretofore been used or proposed in digital form for
   > websites.[48]

16

17   Mr. Gonzalez's statement that he was proposing a "labeling system" that was "common in

18   physical form" was not an isolated occurrence.  He went on to tell the Patent Office that his

19   "Invention" was using "digital labels" for websites in the same way that labels are used in

20   supermarkets to describe a package, such as a bag of potato chips.  Mr. Gonzalez pointed out

21   how there are multiple labels on a bag of potato chips, e.g. a brand label stating that the chips are

22   made by "Frito-Lay", an ingredients label with a list of ingredients, and a weight label stating

23   that the package has "Net Weight 16 oz."  He then explained:

24   ---

[43] On April 25, 2016, the six asserted claims were found invalid by the Eastern District of Texas
25   on the grounds that they claim an abstract idea that is patent-ineligible under 35 U.S.C. § 101.
   *Gonzalez v. New Life Ventures,* 2:14-cv-00907-JRG (E.D. Tex., April 25, 2016).

26   [44] *Alice,* 134 S. Ct. at 2352.

   [45] *Id.* at 2357 (*quoting Mayo,* 132 S.Ct. at 1300).
27   [46] *Ultramercial,* 772 F.3d at 716.

   [47] *Mortgage Grader,* ___ F.3d. ___ ("generic computer components such as an 'interface,'
28   'network,' and 'database' … do not satisfy the inventive concept requirement").

   [48] Brown Decl., Ex. 11 (File History) at GONZ-00481 (emphasis added).

1
2
3

> The Invention proposes that, just as each bag of potato chips is labeled by its manufacturer, each website be encoded by the website creator (owner, representative, etc.) with digital labels. These labels would unambiguously describe what each website is about, what products (if any) are sold on the sites, where the entity described in the website is located (if applicable), who created the website, and so forth.[49]

4  This shows that Mr. Gonzalez told the Patent Office that his invention was to label websites

5  using a digital form of the labels that were already well-known on physical items, such as potato-

6  chip bags.  Reiterating this point, Mr. Gonzalez stated: "websites do not have labels, nothing that

7  is in any way comparable to the labels on a bag of potato chips."[50]

8          The specification of the Gonzalez patents summarizes the invention as a system that

9  labels websites in the same way that a card-catalog labels the books in a library:

10                            SUMMARY OF THE INVENTION

11 There is provided a Host Website system and method in which subscribers label
12 their own products and services and in which similarly labelled objects and
   services are stored in common locations with hierarchical multi-parameter labels.

   The system includes Internet-related data-gathering, labelling, storing and
13 searching methods.  The system and method can best be appreciated by metaphor:
14 consider the Internet as a library whose books (websites) are not only scattered at
   random but also indistinguishable from each other except upon actually being
15 opened.  Internet portals are like librarians who are resigned to the fact that the
   books (websites) are in disarray, but purport to help readers by speed-reading.
16 The present invention creates order in the library by establishing discrete sections
   where books (websites) can be organized by category, and by codifying
17 information about each book (website) on index cards so that readers can more
   easily identify the books (websites) they need.[51]

18 Thus, the specification describes the invention as organizing websites using labels to make them

19 easier to find, just as the labels in a card-catalog organize the books in a library so that they are

20 easier to find.  This shows that the invention of the Gonzalez patents is an abstract idea.

21          Confirming this, the asserted claims describe the abstract idea of label-based search,

22 applied to Internet websites.  For example, the claim chart below shows that claim 1 of the '665

23 patent differs from a library-card search only because it is applied to "Internet Websites" instead

24 of books, and uses "digital labels" instead of "printed labels".

25
26
27

---

[49] Brown Decl., Ex. 11 (Applicant Letter to Examiner) at GONZ-00721.
[50] *Id.*
[51] Brown Decl., Ex. 3 ('665 patent) at 2:48-68.

| '665 Patent, Claim 1 | Library-Card Search |
|---|---|
| 1. A method for multi-parameter ~~digital~~ printed labelling of ~~Internet Websites~~ books, comprising: | Library cards contain printed labels for books.<br><br> |
| gathering of unambiguous, multi-parameter qualitative data concerning a single or a plurality of at least one of ~~an Internet website, an Internet posting~~ a book, their substantive contents, and their owner or creator; | The labels in library cards reflect unambiguous multi-parameter qualitative data about the book, *e.g.* title, author, subject, Library of Congress number. |
| sourcing, from the owner or creator of said ~~website or Internet posting~~ book, each said item of qualitative data referring to said ~~website, said internet posting~~ book, or its substantive contents or its owner or creator; | The data printed as labels on a library card is 'sourced' from the book's owner (the library). Alternatively, this data is 'sourced' from the book's creator (the publisher), which prints the title, author, and Library of Congress number in the book.[52] |
| producing a plurality of ~~digital~~ printed labels for each said ~~website or internet posting~~ book, wherein each ~~digital~~ printed label uniquely refers to and represents a particular item of qualitative information; | Library cards contain printed labels, each of which uniquely refers to and represents a particular item of qualitative information (*e.g.* title, author, subject, Library of Congress number). |
| wherein producing of ~~digital~~ printed labels further comprises encoding of the qualitative data in any ~~digital~~ printed form; | The labels on library cards are encoded in printed form on the library card:<br><br> |

---

[52] The ultimate source of the book's title and author name was the book's author, which may also be considered its creator.

| | |
|---|---|
| domiciling of these multi-parameter ~~digital~~ <u>printed</u> labels ~~on at least one of the same computer, the same computer network, and on several computers linked to each other~~ <u>in a card catalog</u>; | Printed labels on library cards were put in card catalogs:<br> |
| manipulation of the said multi-parameter ~~digital~~ <u>printed</u> labels comprising generation of a list of ~~at least one of websites and Internet postings~~ <u>books</u> that match parameters stipulated by an entity conducting a search and represented in the ~~digital~~ <u>printed</u> labels according to at least one of the presence of, the absence of, the numerical or other value contained in, the numerical or other value not contained in, any one, all, and any configuration of the labels that have reference to one or more ~~websites or Internet postings~~ <u>books</u>; and | Labels on library cards were used to generate of list of books that match search parameters, according to the presence of a value contained in a label, *e.g.* author = Savage, Ernest Albert.<br> |
| making available the effective use of these multi-parameter ~~digital~~ <u>printed</u> labels and the means for their manipulation, to the general public through the ~~Internet~~ <u>card catalog</u>. | Labels on library cards, and the ability to search them, were available to the general public through a library's card catalog. |

This claim chart shows why the asserted claims are invalid under 35 U.S.C. § 101: they claim the abstract idea of using labels to facilitate searches, applied to websites instead of books, and implemented using a computer and the Internet instead of with pen and paper. Neither the use of a computer and the Internet, nor the application of the idea to websites, is enough to add the required "inventive concept."[53]  The fact that the idea of using labels to facilitate searches

---

[53] *See Alice*, 134 S. Ct. at 2352; *Ultramercial*, 772 F.3d at 716; *Mortgage Grader, Inc. v. First Choice Loan Services*, __ F.3d. __, Case No. 2015-1415 (Fed. Cir., Jan. 20, 2016); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F. 3d 1343, 1349 (Fed. Cir. 2015) ("mere data-gathering steps cannot make an otherwise nonstatutory claim statutory").

was performed using pen-and-paper for centuries before Gonzalez's patent application also shows that the claims are not patent-eligible: "[M]ethods which can be performed entirely in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none."[54]

### C.     The asserted claims do not contain the "inventive concept" required by *Alice*.

No tangible, specific innovation is claimed in the Gonzalez patents. The asserted claims describe using conventional technology to implement the abstract idea of labeling websites, not an "inventive concept." The only non-abstract limitations in the claims are terms like "computer," "database," and "the Internet." Likewise, the patents' specification describes implementing the abstract idea of labeling websites using routine and conventional technology. For example, it states that the "process of creating digital labels is not dependent on any particular hardware or form of software."[55] It describes how searches are performed as follows:

> At any later time, any subscriber could be searched for through the Host Website on the basis of any configuration of digital labels, *e.g.*, state-sponsored universities in California which offer minority-eligible scholarships. To perform this search, a Host Website computer would <u>scan its database</u> for listings which have the "mnsch" label as well as the particular labels for the other characteristics of being a school, more precisely a university, state-sponsored, in California.[56]

This is not technical innovation. Performing a search by using a computer to scan a database for particular values was well-known for decades prior to the filing date of the Gonzalez patents. For example, a 1974 article describes how "Structured Query Language," ("SQL" or "Sequel") can be used to perform searches in databases, *e.g.* "Find the items sold by departments on the second floor."[57] Thus, the asserted claims do not include the required "inventive concept."[58] To the contrary, they effectively foreclose all ways of implementing the idea of searching for websites using labels. Thus, they fail the *Alice* test and are invalid as a matter of law.

---

[54] *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011); *see also id.* at 1375 (finding that "a software implementation of a purely mental process that could otherwise be performed without the use of a computer" is not patent-eligible).

[55] Ex. 3 at 5:46-47.

[56] *Id.* at 3:34-41.

[57] *See, e.g.*, Ex. 10 (Chamberlin, D.D. & Raymond, F.B., "SEQUEL: A Structured English Query Language", Proc. ACM-SIGMOD 1974, 249-264) at p. 252.

[58] *Alice*, 134 S. Ct. at 2352; *Ultramercial,* 772 F.3d at 716; *Mortgage Grader*, __ F.3d. __, Case No. 2015-1415 (Fed. Cir., Jan. 20, 2016).

## VI.     THE GONZALEZ PATENTS ARE INVALID UNDER 35 U.S.C. § 102.

### A.     Patent claims are invalid if they don't describe something new.

A patent claim must describe something new.[59]  A patent claim is "anticipated," and thus invalid because it is not new, if a single prior art reference provides an enabling disclosure, either expressly or inherently, of each and every limitation of the claim.[60]  In other words, "that which would literally infringe if later, anticipates if earlier."[61]  Anticipation is a question of fact.[62]  Factual questions about what is disclosed by the prior art are resolved from the perspective of a person of ordinary skill in the art.[63]

### B.     The pre-existing eBay website invalidates the asserted claims.

The Gonzalez patents are invalid because the pre-existing eBay website had features identical to what Mr. Gonzalez accuses of infringement in the Tagged and New Life websites.

As discussed above, Mr. Gonzalez's infringement theory is that the claims are satisfied when a website presents users with online forms that collect information—such as 'body type' and 'yearly income' for a dating profile—that is converted into digital labels, stored in a database, and used to allow searches.  Specifically, Mr. Gonzalez's infringement theory is that the claims are satisfied when a website: (1) prompts users to fill out HTML forms containing menus for providing information such as 'body type' and 'yearly income'; (2) uses a database to store values representing this information, *e.g.* it stores integers representing 'body type' and 'yearly income'; and (3) it allows other users to search the database for those values.

In September 1999, more than a year before the Gonzalez patents were filed, eBay was a public company operating a website with 3.6 million auction listings, and 1.5 billion page-views per month.[64]  The prior art eBay website presented users with online forms to collect information for creating and searching auction listings.  A portion of the eBay form for creating auction listings is shown below.  It contained a menu that allows the user to choose a category,

---

[59] 35 U. S. C. § 102; *Mayo*, 132 S. Ct. at 1300.

[60] *Schering*, 339 F. 3d at 1377, 1380-81.

[61] *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F. 3d 1368, 1378 (Fed. Cir. 2001).

[62] *ActiveVideo Networks v. Verizon Commc'ns*, 694 F. 3d 1312, 1327 (Fed. Cir. 2012)

[63] *Schering*, 339 F. 3d at 1379.

[64] Manheim Declaration In Support Of Tagged's Motion For Summary Judgment of Invalidity ("Manheim Decl.") at ¶ 21; Brown Decl., Ex. 13 (1998 eBay Annual Report).

which is represented by a category number ("category #").  The submitted information was

converted into digital labels and stored in an Oracle database so it could be searched.[65]



66

eBay also used online forms to allow users to specify search parameters:

**Find Items**

By Title · By Item Number · By Seller · By Bidder · Completed Search · International Search

| By Title | | |
|---|---|---|
| eBay's most popular search feature | Search tips |
| | ☐ Search title and description |
| Category | All Categories |
| Price Range | Between $ ___ And $ ___ |
| Regions | All of eBay ___ or Search by country |
| Order by | Ending Date ___ ● ascending ○ descending |

67

The drop-down menus on the eBay search form that allowed selection of the 'Category'

and 'Region' to be searched are shown below:

---

[65] Ex. 13 (1998 eBay Annual Report) at 8 ("A seller registered with eBay can list a product for auction by completing a short online form"); 12 ("The Company's system consists of Sun database servers running Oracle relational database management systems"); 8 ("Bidders also can search specific categories or the entire database of auction listings").

[66] Ex. 14 (eBay book) at p. 80 (TAG-0031699).

[67] Ex. 15 (eBay Search Form from Oct. 12, 1999) at TAG-0031500

| Browser[68] | HTML[69] |
|---|---|
| Category — All Categories / Antiques / Books, Movies, Music / Coins & Stamps / Collectibles / Computers / Dolls, Figures / Jewelry, Gemstones / Photo & Electronics / Pottery & Glass / Sports Memorabilia / Toys, Bean Bag Plush / Miscellaneous; Price Range; Regions; Order by; View Results | `<select name="category0">` `<option value="">All Categories</option>` `<option value="353">Antiques</option> <option value="266">Books, Movies, Music</option>` `<option value="866">Coins & Stamps</option>` `<option value="1">Collectibles</option>` `<option value="160">Computers</option>` `<option value="237">Dolls, Figures</option>` `<option value="281">Jewelry, Gemstones</option>` . . . `</select>` |
| Regions — All of eBay / AZ--Phoenix / CA--Los Angeles / CA--Sacramento / CA--San Diego / CA--San Francisco / CO--Denver / CT--Hartford / DC--Baltimore-Washington / FL--Jacksonville; Order by; View Results | `<select NAME="ebaytag1code" SIZE="1">` `<option VALUE="0" selected>All of eBay</option>` `<OPTION VALUE="39">AZ--Phoenix` `<OPTION VALUE="1">CA--Los Angeles` `<OPTION VALUE="45">CA--Sacramento` `<OPTION VALUE="48">CA--San Diego` `<OPTION VALUE="49">CA--San Francisco` `<OPTION VALUE="16">CO--Denver` . . . `</select>` |

As this shows, the eBay website works just like the accused websites: (1) it prompts users to fill out HTML forms containing menus for providing information (*e.g.* 'Category' and 'Region'); (2) it uses a database to store values representing the information provided (*e.g.* integers representing an auction listing's 'Category' and 'Region'), and (3) it allows users to search the database for those values. Thus, as shown in more detail by the claim charts below, the prior art eBay website satisfies the asserted claims for the same reasons that Gonzalez argued that the accused websites infringe. This shows invalidity: "if granting patent protection on the disputed claim would allow the patentee to exclude the public from practicing the prior art, then that claim is anticipated."[70]

| '807 Patent | Accused Website | Prior Art EBay Website |
|---|---|---|
| 1. A host website apparatus for listing subscribers comprising: | The accused website runs on a computer system and lists subscribers' dating profiles. | eBay.com ran on a computer system, and listed subscribers' auction listings. |

---

[68] The images in this column are from Ex. 15 at TAG-0031500.

[69] This column is from the same source, rendered as text. Ex. 16 at TAG-0031507-08.

[70] *Schering*, 339 F. 3d at 1379.

| a computer system, | The accused website runs on a computer system. | eBay.com ran on a computer system. |
|---|---|---|
| said computer system includes a digital label database for providing to a listing subscriber digital labels representing different specific qualities and a subscriber database for storing a listing of subscribers' digital labels; | The accused website uses a database to store both the values representing each of the possible choices from menus, *e.g.* for "Body Type" and "Annual Income", and the particular value representing a specific user's actual choice from those menus. | eBay.com used a database to store both the values representing each of the possible choices from menus for "Category" and "Region", and the particular value representing a specific user's actual choice from those menus. |
| said computer system being configured to respond to a subscriber's request for listing and guiding the subscriber via the Host Website display to enter information pertaining to the subscriber and | The accused website responds to a user's request for listing by using HTML forms to guide the user to provide information pertaining to the user, *e.g.* the "Body Type" and "Annual Income" for the user's dating profile. | eBay.com responds to a user's request for listing by using HTML forms to guide the user to provide information pertaining to the user, *e.g.* the "Category" and "Region" for the item the user wishes to auction. |
| converting the information to digital labels by accessing said digital label database and storing the subscriber's digital labels in said subscriber database; and | When a user submits an HTML form, the values representing the user's choices from the menus in that form are transmitted via HTTP to the accused website's server, where they are stored in a database. | When a user submits an HTML form, the values representing the user's choices from the menus in that form are transmitted via HTTP to an eBay.com server, where they are stored in a database. |
| said computer system further configured to enable users to search said subscriber database for subscriber digital labels identifying subscriber qualities. | The accused website is configured to enable users to use an HTML form to specify search criteria for searching its database of user dating profiles, including for example by searching for a specific "Body Type" and/or "Annual Income." | eBay.com is configured to enable users to use an HTML form to specify search criteria for searching its database of user's auction listings, including for example by searching for a specific "Category" and/or "Region." |

| 2. A website as in claim 1 in which the website is configured for a specific subject. | The accused website is configured for a specific subject: dating. | eBay.com is configured for a specific subject: auction listings.  Portions of the eBay website are also configured for auction listings in specific categories, or in specific regions, *e.g.* Ex. 24 (showing eBay 'Automotive' website), Ex. 25 (showing eBay Los Angeles website). |
|---|---|---|
| Claim 3 contains a subset of the limitations of Claim 1. | | |

| '665 Patent | Accused New Life Website | Prior Art EBay Website |
|---|---|---|
| 1. A method for multi-parameter digital labelling of Internet Websites, comprising: | The accused website is configured to perform multi-parameter digital labeling for its dating profiles, as described below. | eBay.com was configured to perform multi-parameter digital labeling for its auction listings, as described below. |
| gathering of unambiguous, multi-parameter qualitative data concerning a single or a plurality of at least one of an Internet website, an Internet posting, their substantive contents, and their owner or creator; | The accused website gathers unambiguous, multi-parameter qualitative data from its users by using HTML forms to guide the user to provide information pertaining to themselves, *e.g.* the "Body Type" and "Annual Income" for the user's dating profile. | eBay.com gathers unambiguous, multi-parameter qualitative data from its users by using HTML forms to guide the user to provide information pertaining to the user's auction listing, *e.g.* the "Category" and "Region" for the item the user wishes to auction. |
| sourcing, from the owner or creator of said website or Internet posting, each said item of qualitative data referring to said website, said internet posting, or its substantive contents or its owner or creator; | The accused website sources this unambiguous, multi-parameter qualitative data from its users by using HTML forms to guide the user to provide information pertaining to themselves, *e.g.* the "Body Type" and "Annual Income" for the user's dating profile. | eBay.com sources this unambiguous, multi-parameter qualitative data from its users by using HTML forms to guide the user to provide information pertaining to the user's auction listing, *e.g.* the "Category" and "Region" for the item the user wishes to auction. |

| | | |
|---|---|---|
| producing a plurality of digital labels for each said website or internet posting, wherein each digital label uniquely refers to and represents a particular item of qualitative information;<br><br>wherein producing of digital labels further comprises encoding of the qualitative data in any digital form; | When a user submits an HTML form, the values representing the user's choices from the menus in that form are transmitted via HTTP to the accused website's server, where they are stored in a database. | When a user submits an HTML form, the values representing the user's choices from the menus in that form are transmitted via HTTP to an eBay.com server, where they are stored in a database. |
| domiciling of these multi-parameter digital labels on at least one of the same computer, the same computer network, and on several computers linked to each other; | When a user submits an HTML form, the values representing the user's choices from the menus in that form are transmitted via HTTP to the accused website's server, where they are stored in a database. | When a user submits an HTML form, the values representing the user's choices from the menus in that form are transmitted via HTTP to an eBay.com server, where they are stored in a database. |
| manipulation of the said multi-parameter digital labels comprising generation of a list of at least one of websites and Internet postings that match parameters stipulated by an entity conducting a search and represented in the digital labels according to at least one of the presence of, the absence of, the numerical or other value contained in, the numerical or other value not contained in, any one, all, and any configuration of the labels that have reference to one or more websites or Internet postings; and | The accused website is configured to enable users to use an HTML form to specify search criteria for searching its database of user dating profiles, including for example by searching for a specific "Body Type" and/or "Annual Income." | eBay.com is configured to enable users to use an HTML form to specify search criteria for searching its database of user's auction listings, including for example by searching for a specific "Category" and/or "Region." |
| making available the effective use of these multi-parameter digital labels and the means for their manipulation, to the general public through the Internet. | The accused website is configured to enable any subscribed users to use an HTML form to specify search criteria for searching its database of user dating profiles, including for example by searching for a specific "Body Type" and/or "Annual Income." | eBay.com is configured to enable any member of the public to use an HTML form to specify search criteria for searching its database of user's auction listings, including for example by searching for a specific "Category" and/or "Region." |

| | | |
|---|---|---|
| 42. The method of claim 1, wherein the creator of the website is the owner or administrator of the website, and is provided with access to edit or modify the website or the labels associated with the website. | The accused website is configured so that the creator of a dating profile is able to edit of modify their dating profile. | eBay.com is configured so that the creator of an auction listing is able to edit of modify their auction listing. |
| 53. The method of claim 1, wherein the information encoded in a single label refers to at least one of … the geographic area where a person resides such as a country, region, state, city, neighborhood and district, but is not a precise address … | The accused website is configured so that one part of the information gathered by its HTML forms is the geographic area where the user resides. | eBay.com is configured so that one part of the information gathered by its HTML forms is the geographic area where the user's auction listing resides. |

At trial in the *New Life* case, Mr. Gonzalez responded to the evidence that eBay invalidates the asserted claims by arguing that there was no evidence that the eBay website (1) used a database, (2) it used menus in an online form to obtain the information used to create auction listings, and (3) no evidence that it had source code that operated in a manner analogous to the source code in the accused website.  All of these arguments have been eliminated here because this motion presents three sources of evidence regarding eBay that were not presented to the jury in the *New Life* trial: (i) the eBay 10-K for 1998, (ii) the eBay book containing an image and description of the form used for creating an auction listing, and (iii) the HTML source code for the eBay search forms.  The eBay 10-K establishes that the eBay website used a database.[71]  The eBay book and the eBay 10-K both establish that the eBay website used a form to obtain the information used to create auction listings.[72]  Finally, the HTML source code establishes that eBay's website generates digital labels in exactly the same way as the accused websites, by using standard HMTL to assign a value to a user's choice from a menu:

---

[71] Ex. 13 (1998 eBay Annual Report) at 12 ("The Company's system consists of Sun database servers running Oracle relational database management systems"); 8 ("Bidders also can search specific categories or the entire database of auction listings").

[72] *Id*. at 8 ("A seller registered with eBay can list a product for auction by completing a short online form"); Ex. 14 (Kaiser & Kaiser, THE OFFICIAL EBAY GUIDE TO BUYING, SELLING, AND COLLECTING JUST ABOUT ANYTHING (Simon & Shuster, 1999) at pp. 80-81, *see generally id.* at pp. 77-102.

| Accused Website | 1999 eBay Website |
|---|---|
| **BodyType** <br> ✓ Select <br> Slim <br> Athletic <br> Average <br> Muscular <br> A few extra pounds <br> Curvy <br> Overweight <br> Select | Category ▸ All Categories <br> Price Range ▸ Antiques <br> Regions ▸ Books, Movies, Music <br> Order by ▸ Coins & Stamps <br> View Results ▸ Collectibles <br> Computers <br> Dolls, Figures <br> Jewelry, Gemstones <br> Photo & Electronics <br> Pottery & Glass <br> Sports Memorabilia <br> Toys, Bean Bag Plush <br> Miscellaneous <br> Text only results |
| `<select name="bodytype" id="bodytype"` <br> `class="select_ui">` <br> `<option value="">Select</option>` <br> `<option value="7">Slim</option>` <br> `<option value="2">Athletic</option>` <br> `<option value="3">Average</option>` <br> `<option value="5">Muscular</option>` <br> `<option value="1">A few extra pounds</option>` <br> `<option value="4">Curvy</option>` <br> `<option value="6">Overweight</option>` <br> `</select>` | `<select name="category0">` <br> `<option value="">All Categories</option>` <br> `<option value="353">Antiques</option> <option` <br> `value="266">Books, Movies, Music</option>` <br> `<option value="866">Coins & Stamps</option>` <br> `<option value="1">Collectibles</option>` <br> `<option value="160">Computers</option>` <br> `<option value="237">Dolls, Figures</option>` <br> `<option value="281">Jewelry, Gemstones</option>` <br> `. . .` <br> `</select>` |

In sum, there is no reasonable dispute that the eBay website satisfies the asserted claims for the same reasons that Gonzalez argued that the accused websites infringe.  As a result, summary judgment of invalidity should be granted.

### C.    Mr. Gonzalez's admissions confirm that he did not invent anything new.

Mr. Gonzalez's position in this case is that despite his lack of technical knowledge, he came up with a solution to the "very real technical problems" that bedeviled Yahoo!, Google, Altavista, and many others—a solution that "completely modified the search approach" and "represented a paradigm shift."[73]  Mr. Gonzalez argued to the Patent Office that "There is no prior art for website labels, much less digital website labels."[74]

Mr. Gonzalez's sworn admissions show otherwise.  At his deposition, and again at the *New Life* trial, Mr. Gonzalez admitted that digital labeling of websites was "commonplace" at the time of his patent application, and not something that he had invented:

> Q. And at the time that you filed this provisional application in the fall of 2000, you believed that single-parameter labeling of websites, single-parameter digital labeling of websites was commonplace, correct?

---

[73] Ex. 23 (*New Life* Dkt. #147) at 4, 5.

[74] Ex. 6 (*New Life* trial, 2-08-2016) at 131:14-17; *see generally id.* at 129:23-131:17; Ex 11 (11-09-2007 Letter to Patent Office) at GONZ-00723; Ex. 17 (Provisional Application) at 10.

A. Yes.

Q. You didn't think you had invented single-parameter labeling of websites?

A. No. May I add?

Q. Please.

A. But Yahoo! fails not just because of the difference between single and multi-parameters. It also fails to anticipate my invention because the data was not obtained directly from the owners of the websites. The data was judged by employees of Yahoo! who had read the website.

Q. Do you think that you invented something about single-parameter digital labeling or not?

A. Certainly not. [75]

Mr. Gonzalez also admitted that digital labels were used on the pre-existing eBay search form shown below:



In particular, Mr. Gonzalez admitted that the 'Category,' 'Price Range,' and 'Regions' fields of this search form were digital labels:

Q. And then the -- but even just as it's shown, the category there where you can select one of a number of options, that would be one digital label, correct?

A. Yes. [76]

* * *

Q. And, then below it, there is price and you can specify a range. Do you agree that that is a second digital label?

A. Yes. [77]

* * *

Q. Is this Regions line, the fourth line in the table, something that you could use to query a digital label database?

A. Yes.

Q. So the regions in the database would be the digital labels?

A. To the extent that they represent vendor entries, yes. [78]

---

[75] Ex. 7 (Gonzalez Depo.) at 167:24-168:21. Ex. 6 (*New Life* trial, 2-08-2016) at 128:4-129:2.
[76] *Id.* at 211:21-25.
[77] *Id.* at 212:1-5.
[78] *Id.* at 213:25-214:7; *see generally id.* at 127:15-128:13; 130:4-131:25.

1    In sum, Mr. Gonzalez has admitted that he did not actually invent digital labeling of websites,

2    and that the prior art eBay website used digital labels.[79]

3          Mr. Gonzalez also argued in this case that he invented the idea of sourcing data for the

4    digital labels from the website's creator.[80]  But Mr. Gonzalez had previously admitted that he did

5    not invent this either: "What is the fastest and most accurate way to label many objects? *The*

6    *same way it has always been done: Let each maker label its own products*."[81]

7          All of these admissions bind Gonzalez.[82]   Together, they show that by the time his

8    deposition was complete, Mr. Gonzalez had admitted that he did not invent *any* of the ideas

9    claimed in his patents.  This confirms that the asserted claims are invalid as a matter of law.[83]

10   **VII.    CONCLUSION**

11         For the reasons stated herein, summary judgment of invalidity should be granted.

12   DATED:  January 24, 2013                    **GREENBERG TRAURIG, LLP**

13

14                                              By:   */s/ Nicholas A. Brown*

15                                              NICHOLAS A. BROWN (SBN 198210)
                                                brownn@gtlaw.com
16                                              GREENBERG TRAURIG, LLP
                                                4 Embarcadero Center, Suite 3000
17                                              San Francisco, CA 94111
                                                Telephone: (415) 655-1300
18                                              Facsimile: (415) 707-2010

19                                              Attorneys for Defendant Tagged Inc.

20

21

22

23

24   [79] Mr. Gonzalez also admitted that he did not invent any improvement to databases, and that
     using databases to perform multi-parameter searches was known prior to his invention.  Ex. 6
25   (*New Life* trial, 2-08-2016) at 98:5-99:7.  *See also* 7 (Gonzalez Depo.) at 121:7-9, 115:7-9,
     170:1-21.

26   [80] *Id.* at 24:20-28:1.

27   [81] Ex. 17 (Provisional Application) at 7 (emphasis in original).

     [82] *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362-63 (Fed. Cir. 2007).

28   [83] *See Blackboard, Inc. v. Desire2Learn, Inc.,* 574 F.3d 1371, 1381 (Fed. Cir. 2009) ("finding
     that the "conclusion of anticipation is dictated by the testimony of Blackboard's own witnesses
     and the documentary evidence.")

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

Dated: May 10, 2016                           _/s/ Nicholas A. Brown_

Nicholas A. Brown